# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARILYN MITHCELL, *Deceased*, and
MICHAEL W. MITCHELL, *Special Administrator*,

    Plaintiffs,

v.

STEAK N SHAKE ENTERPRISES, INC.,

    Defendant.

Case No. 3:17-cv-00409-JPG-MAB

## MEMORANDUM AND ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

Plaintiff Marilyn Mitchell ate a meal at Steak N Shake in a corner booth near the cash register and the front door of the establishment. A high-definition security video tells all: while Mitchell was eating, Steak N Shake employees mopped around the front door, and then put up yellow-caution signs indicating that the area was wet. (ECF No. 55.) They then mopped the adjacent area which fell between Mitchell's booth and the register, and once again put up yellow-caution signs—one of which was right next to Mitchell. (*Id.*)

When Mitchell finished her meal and was ready to pay, she began to get up in order to walk over to the cash register. (ECF No. 55.) But the general manager of the store stopped Mitchell and offered to take Mitchell's payment to the register for her, specifically because the manager did not want Mitchell to "undertake the risk of walking from where she was sitting to where the cashier was" because of the recently-mopped floor. (Cassidy Baker Dep, ECF No. 54-4, 57:19–22.) Once the manager processed the payment, she gave Mitchell her receipt. But then the accident occurred: Mitchell stood up and slowly walked to the front door of the establishment—directly through the area that had recently been mopped—and suddenly slipped backwards, breaking her hip. Mitchell

1

then sued Steak N Shake for her injury under a theory of negligence, and the special administrator of Mitchell's estate later replaced her in this action when Mitchell passed away. (Am. Compl., ECF No. 19.)

Steak N Shake has now moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 53.) They are entitled to summary judgment if they "show that there is no genuine dispute as to any material fact and [if they are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). But while reviewing the material facts, the Court must construe the evidence in the light most favorable to the nonmoving party—here, Mitchell—and draw all reasonable inferences her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

Because this action is here on diversity jurisdiction, everyone agrees that Illinois law applies to this case: a federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Am. Family Mut. Ins. Co. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). To prevail on a theory of negligence in Illinois, a plaintiff must show the existence of a duty, the defendant's breach of that duty, and that the breach proximately caused the plaintiff's resulting injuries. *Roh v. Starbucks Corp.*, 881 F.3d 969, 973 (7th Cir. 2018) (citing *Mt. Zion State Bank & Trust v. Consol. Commc'ns, Inc.*, 169 Ill.2d 110, 214 Ill.Dec. 156, 660 N.E.2d 863, 868 (1995)). And in slip-and-fall cases like this one, Illinois follows the common Restatement (Second) of Torts approach when analyzing whether the defendant had and breached some sort of duty. *Sollami v. Eaton*, 201 Ill. 2d 1, 15, 772 N.E.2d 215, 223 (2002). Specifically, Section 343 of the Restatement instructs:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965); *Kleiber v. Freeport Farm & Fleet, Inc*., 406 Ill. App. 3d 249, 256, 942 N.E.2d 640, 647 (2010). In plain English, this means that Steak N Shake is only liable here if they (1) knew or should have known that the recently-mopped floor would pose a risk to its customers; (2) should have expected that its customers either would not realize that the floor was wet or would fail to protect themselves against it; and (3) Steak N Shake failed to reasonably protect its customers from the danger, leading to an injury.

That leads into a second important part of the Restatement:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is **known or obvious** to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) of Torts § 343A(1) (1965) (emphasis added); *see also* Sollami, 772 N.E.2d at 223; *Winters v. MIMG LII Arbors at Eastland, LLC*, 2018 IL App (4th) 170669, ¶ 52, 115 N.E.3d 282, 291. And here, Steak N Shake says that they are not liable as a matter of law because the recently-mopped floors posed a **known or obvious** danger—specifically because Mitchell received warnings about the wet floors both from the yellow signs as well as alleged verbal warnings from employees. *See Ward v. K Mart Corp.,* 136 Ill.2d 132, 141, 554 N.E.2d 223, 227 (1990) (explaining how adequate warnings satisfy a defendant's obligations under the Restatement).

The problem for Steak N Shake, however, is that when viewing the facts here—specifically the video footage—in the light most favorable to Mitchell, the deliberate-encounter exception to the known and obvious danger doctrine applies. Under the deliberate-encounter exception, "the open and obvious danger rule will not apply if the possessor of land has reason to anticipate or expect that the invitee will proceed to encounter an open and obvious danger because to a reasonable person in the invitee's position[,] the advantages of doing so outweigh the apparent risk." *Kleiber*, 942 N.E.2d at 648 (citing Restatement (Second) Torts § 343A, Comment f (1965)); *see also LaFever v. Kemlite Co., a Div. of Dyrotech Indus.,* 185 Ill. 2d 380, 391, 706 N.E.2d 441, 448 (1998); *Dunn v. Menard, Inc*., 880 F.3d 899, 908 (7th Cir. 2018). Although this exception generally arises in cases involving employment or economic compulsion—just as Steak N Shake points out—the Illinois Supreme Court has expressly stated that the exception does not only apply in those types of cases. *Sollami*, 772 N.E.2d at 224.

Here, although Steak N Shake warned Mitchell of the recently-mopped floors through the placement of the yellow signs,[1] the video footage makes clear that Steak N Shake should have expected that Mitchell would walk across that area anyways. The general manager certainly knew that Mitchell was about to stand up and leave, considering she admitted at her deposition that she took Mitchell's payment up to the register for her because she did not want Mitchell to "undertake the risk of walking from where she was sitting to where the cashier was." But after the transaction was completed, the manager then watched Mitchell stand up and across the recently-mopped area in front of the front door anyways—which any customer would have to walk through in order to leave the building.

---

[1] The Court finds it unnecessary to address any alleged verbal warnings at this juncture.

And Mitchell surely walked across that area anyways because a reasonable person in her position—someone who just finished eating at a fast-food restaurant—would stand up and leave the restaurant once they have completed their meal. Steak N Shake's alternative proposal—that "an objectively reasonable person in "Mitchell's situation would wait out the floor drying"—is perhaps more fitting for a comedy sketch than real life. Does the restaurant truly believe that its patrons should literally sit in their booths and watch the floor dry after they have finished their meals? Steak N Shake's proposal means that fast-food restaurants would essentially trap its customers inside the building whenever the restaurant mops the floor around the front door—which is quite antithetical to the definition of "fast food."

Because the deliberate-encounter exception applies to these facts, this case must proceed to the fact-finder for an allocation of fault between the parties as a question of fact. *Louisville & C. Ry. Co. v. Red*, 154 Ill. 95, 97, 39 N.E. 1086, 1086 (1894). That leads to Steak N Shake's other argument: In Illinois, a plaintiff whose contributory negligence is more than 50% of the proximate cause of the injury is barred from recovering damages. 735 ILCS 5/2-1116. And although contributory negligence is generally a question of fact for the jury, "it does become a question of law when all reasonable minds would agree that the evidence and the reasonable inferences therefrom, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Coole v. Cent. Area Recycling*, 384 Ill. App. 3d 390, 396, 893 N.E.2d 303, 309 (4th Dist. 2008) (quoting *Basham v. Hunt*, 332 Ill. App. 3d 980, 995, 773 N.E.2d 1213, 1226 (1st Dist. 2002). Steak N Shake accordingly asks the Court to enter judgment in their favor because, according to them, no verdict that finds them at least 50% at fault could ever stand.

But here, for the reasons explained above, it is certainly not the case that "all reasonable minds would agree" that the video footage so overwhelmingly favor Steak N Shake that no contrary verdict [for Mitchell] could ever stand. To the contrary, this is a case where the video footage—especially when viewed in the light most favorable to the nonmoving party, Mitchell—could lead to a number of reasonable outcomes. One fact-finder could watch the video and certainly think that Mitchell should not have walked through the recently-mopped area, and find her at more than 50% at-fault; but another reasonable fact-finder could certainly find that the general manager's conduct in stopping Mitchell from walking to the register but then letting her walk to the front door makes Steak N Shake at least 50% at-fault. This is too close of a call to enter judgment for Steak N Shake as a matter of law.

All that being said, the Court must clarify that its decision rests *only* on the principles explained above. In Mitchell's response to the motion for summary judgment, she made a number of improper arguments that the Court did not consider when making its determination. For example, Mitchell cites to subsequent remedial evidence that Steak N Shake escorted at least one customer out of the restaurant through the recently-mopped area *after* Mitchell fell, even though Federal Rule of Evidence 407 expressly prohibits the admissibility of such evidence. She also asserts without proper citation that Mitchell was disabled and handicapped, which the Court absolutely has not considered. Mitchell also argues that Steak N Shake had some sort of internal policy to escort disabled or elderly customers, although her evidence on this theory appears to be a local policy from a completely different Steak N Shake location than the one at issue in this case. Finally, the Court did not consider any evidence of about the "Quick Mop System" and the differences between dry and wet mops—as Steak N Shake pointed out in their reply brief, those

arguments were red herrings when it comes to the specific legal issues contained in their motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Steak N Shake's motion for summary judgment. (ECF No. 53.) This matter is set for a bench trial on May 20, 2019.

**IT IS SO ORDERED.**

**DATED: MARCH 12, 2019**

s/ *J. Phil Gilbert*
J. PHIL GILBERT
U.S. DISTRICT JUDGE
